# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ALLEN MORRIS,

Petitioner,

- v -

Civ. No. 9:13-CV-1441
(GLS/RFT)

BRANDON SMITH,

Respondent.

**APPEARANCES:**                                    **OF COUNSEL:**

ALLEN MORRIS
*Pro se* Petitioner
4411505097
BRC - Hope Health Home
146 Clay Street
Brooklyn, NY 11222

HON. ERIC T. SCHNEIDERMAN                THOMAS B. LITSKY, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Petitioner Allen Morris seeks a Writ of *Habeas Corpus*, pursuant to 28

U.S.C. § 2254, on the grounds that 1) his conviction violates his right against double

jeopardy; 2) Counsel provided ineffective assistance; and 3) the evidence obtained

was pursuant to an unlawful arrest.  Dkt. No. 1, Pet., at pp. 5-6.

## I.  Background

## A.  Petitioner's Crime

Petitioner's criminal charges stem from an incident that occurred while he was incarcerated at Cape Vincent Correctional Facility.  Dkt. No. 9-2, State R. Part 2 at p. SR 458, Inmate Misbehavior Rep., dated July 26, 2009.  On July 25, 2009, the Facility placed Petitioner on "drug watch" as he was suspected of placing an object in his rectum.  *Id.*  On July 26, 2009, a correctional officer, who was assigned to perform the "special drug watch," found a "blue object" in Petitioner's feces.  *Id.*  Upon examination by the Watch Commander's Office, it was revealed that the object consisted of three layers of balloons, with the last layer containing nine glassine bags labeled "magic."  *Id.*  According to the July 26, 2009 Inmate Misbehavior Report, one of the bags was tested with a "NIK test 'A,'" that indicated the bag contained heroin because the "result was a color purple."  *Id.*

The next morning, on July 27, 2009, another blue balloon was discovered in Petitioner's feces.  State R. Part 2 at p. SR 312, Inmate Misbehavior Rep., dated July 27, 2009.  That balloon contained two more balloons, with the last layer holding ten packets labeled "magic." The Facility weighed the packets and determined that the packets weighed 3.4 grams in total.  *Id.*  According to the July 27 Inmate Misbehavior

Report, "one packet was opened" and tested with "NIK Test 'B,'" which indicated the packet contained heroin because the "result was a yellow to green color." *Id.*

Shortly thereafter, a Tier III Disciplinary Hearing was conducted, and Petitioner was found guilty of Drug Possession and Smuggling. Dkt. No. 9-1, State R. Part 1 at p. SR 222, Superintendent Hr'g Disposition Rendered, dated Aug. 6, 2009. Plaintiff appealed the disciplinary determination to Norman Bezio, the Director of Special Housing and Inmate Discipline. State R. Part 1 at p. SR 224, Bezio Mem., dated Sept. 11, 2009. Bezio issued a decision [hereinafter "Disciplinary Appeal Decision"] dismissing the charges against Petitioner because "[t]he drug testing evidence provided [did] not support a positive finding for opiates." *Id.* Bezio did not provide any reasons for his finding. *Id.*

On February 4, 2010, Petitioner was indicted, in New York State County Court, Jefferson County, for Criminal Possession of a Controlled Substance in the Third Degree and Promoting Prison Contraband in the First Degree. State R. Part 1 at p. SR 076, Indict., dated Feb. 4, 2010. On April 12, 2010, Petitioner's Counsel filed a Omnibus Pretrial Motion seeking, *inter alia*, 1) "Dismissal of Indictment because there is no controlled substance at issue"; 2) review of the grand jury proceeding for insufficiency of the evidence and other defects; 3) dismissal of the Indictment "because the defendant was previously prosecuted for the same conduct"; 4)

suppression of "any alleged statements made in this matter"; 5) further discovery; and 6) that the People be barred from presenting evidence of a controlled substance. State R. Part 1 at p. SR 081, Omnibus Pretrial Mot., dated Apr. 12, 2010.

On May 3, 2010, the County Court Judge denied the Omnibus Pretrial Motion. *See generally* State R. Part 1 at pp. SR 101-09, Cnty. Ct. Dec.-Order, dated May 3, 2010. Counsel then made a demand for a judicial subpoena *duces tecum* for "any and all records" related to Petitioner's Tier III Disciplinary Hearing, including "any drug testing evidence." *See* State R. Part 1 at pp. SR 159 & SR 162, Resp. to Mot. to Dismiss, dated July 28, 2010. That subpoena was issued and signed by the County Court Judge on June 11, 2010. State R. Part 1 at p. SR 170, Judicial Subpoena *Duces Tecum*, dated June 11, 2010. On July 22, 2010, Petitioner's Counsel filed a Motion to Dismiss the Indictment on the ground that the packets did not contain "controlled substances." State R. Part 1 at pp. SR 138-39, Affirm. in Supp. of Mot. to Dismiss, undated. To support his position, Counsel submitted a copy of the Disciplinary Appeal Decision. *Id.* at p. SR 139. On July 30, 2010, the County Court Judge denied the Motion to Dismiss the Indictment. *See generally* State R. Part 1 at pp. SR 184-86, Cnty. Ct. Dec-Order, dated July 30, 2010. That decision noted that although the Petitioner was provided with additional time to investigate the circumstances of the Disciplinary Appeal Decision, he did not attempt to explain the basis for Bezio's

determination that the evidence produced at the Disciplinary Hearing did not support a positive finding. The County Court also explained that Bezio's determination "may have been the result of insufficient evidence or the failure to submit any evidence at all that the substance allegedly secreted by [Petitioner] was heroin. . . [or] a failure to comply with testing procedures set for[th] in the Rules and Regulations of the Department of Correctional Services []." *Id.* at p. 186. Thus, the County Court found that the Disciplinary Appeal Decision "in no way proves that the substance was not, in fact heroin." *Id.*

On August 3, 2010, Petitioner pled guilty to Criminal Possession of a Controlled Substance in the Third Degree and agreed to a waiver of appeal. State R. Part 1 at p. SR 005, Plea Tr., dated Aug. 3, 2010. The County Court Judge advised Petitioner that a guilty plea

> is the same thing as if the DA proved [Petitioner] guilty of this one count beyond a reasonable doubt, the same thing as if we had 12 people as jurors that sat here and listened to all the evidence, they took a vote and unanimously found you guilty of this one count[.]

*Id.* at p. SR 009.

The County Court Judge further advised Petitioner that he was waiving his right to an appeal, but reserved his "right for jurisdictional appeal." *Id.* at p. SR 005. Petitioner's Counsel expanded on that statement by stating,

> whether the sentence was legal, jurisdiction, whether I screwed up, and whether you knowingly and voluntarily entered into your plea; those are

the four things you always keep. But anything other than those four things, you don't have the right to appeal, you are giving up your right to appeal. That's what was just explained.

*Id.*

In addition, prior to entering a guilty plea, Petitioner acknowledged that he understood and, when asked his educational level, he stated that he graduated from SUNY New Paltz with a Bachelor's Degree in social science. *Id.* at p. SR 010.

On October 4, 2010, Petitioner was sentenced to a determinate term of two years, followed by one year and a half of post-release supervision. State R. Part 1 at p. SR 026, Sentencing Tr., dated Oct. 4, 2010.

## II. STATE COURT REVIEW

### A. Direct Appeal

Petitioner's Appellate Attorney, Matthew Brooks, filed a brief, with the Appellate Division, Fourth Department, dated November 16, 2011, in which he argued that 1) the Petitioner did not enter a plea knowingly and voluntarily because he was misled by the trial court as to nature of the actual sentence imposed; 2) he received ineffective assistance because Counsel failed to file adequate motions to dismiss the Indictment and did not apprise him of a direct consequence of entering a guilty plea; 3) the trial court failed to investigate whether Petitioner's request for substitute counsel had a genuine basis; 4) he should have not been indicted because the New York State Department of Corrections and Community Supervision ("DOCCS") had

previously dismissed the prison disciplinary charges because the evidence showed that the packets did not contain opiates. Therefore, the criminal charges were barred by the doctrines of *res judicata* and/or administrative collateral estoppel and, as a result, the Indictment "violates his constitutional rights by illegally placing him in double jeopardy"; and 5) he requested that the Appellate Division construe the County Court's "lack of formal decision as a denial" because Petitioner had not yet received a determination to his March 7, 2011 § 440.10 Motion. *See generally* State R. Part 1 at pp. SR 028-65, Pet'r's Appellate Div. Br., Nov. 16, 2011.

On April 20, 2012, the Appellate Division, Fourth Department, unanimously affirmed Petitioner's Judgment of Conviction. State R. Part 2 at p. SR 266, Appellate Div. Mem. & Order, dated Apr. 20, 2012. The Fourth Department found that 1) Petitioner's contention that the County Court Judge abused its discretion in denying Petitioner's motion to withdraw his guilty plea on the ground that he was misinformed with respect to the negotiated sentence was "without merit" because the record shows that the County Court Judge informed the Petitioner that his sentence would run consecutively; 2) the County Court Judge did not fail to make an appropriate inquiry into his two requests for substitution of counsel;[1] 3) Petitioner's assertion that he was

---

[1] Specifically, the Fourth Department found that Petitioner's first request for substitution of counsel failed to list any reasons for the motion; Petitioner did not repeat that request or raise any complaints concerning his representation at subsequent court appearances; and Petitioner implicitly abandoned that request when he pled guilty while still being represented by the same attorney. The Department further concluded that the County Court Judge "made a sufficient
(continued...)

denied effective assistance of counsel does not survive his guilty plea, or the waiver of the right to appeal, because he fails to demonstrate that the ineffective assistance infected the plea bargaining process or that Petitioner entered a guilty plea because of Counsel's poor performance; 4) Petitioner's contention that the County Court Judge erred in denying the part of his Omnibus Motion that sought to dismiss the Indictment does not survive his "valid waiver of the right to appeal" nor "his guilty plea"; and 5) his request regarding his § 440 Motion was not properly before the Department. *See generally id.* at pp. SR 266-68.

On April 27, 2012, Petitioner's Appellate Attorney submitted an Application for Leave to Appeal to the New York State Court of Appeals. State R. Part 2 at p. SR 269, Pet'r's Appl. for Leave to Appeal, dated Apr. 27, 2012. Petitioner also submitted a *pro se* submission in support of his Application. State R. Part 2 at p. SR 284, Pet'r's Submission in Supp. for Leave to Appeal, dated May 22, 2012. In his Application for Leave to Appeal, Petitioner argued that 1) Jefferson County did not have jurisdiction to charge him with a crime because DOCCS previously dismissed the disciplinary charges against him after determining that the packets did not contain a controlled substance; 2) Jefferson County should have been barred from proceeding against him based on the doctrine of *res judicata* and collateral estoppel; and 3) that his Counsel

---

[1](...continued)
inquiry" with respect to Petitioner's second request for substitution of counsel. Dkt. No. 9-2,State R. Part 2 at p. SR 267, Appellate Div. Mem. & Order, dated Apr. 20, 2012.

provided ineffective assistance because he failed to move to dismiss the Indictment. On July 17, 2012, the New York Court of Appeals denied Petitioner leave to appeal. *People v. Morris*, 19 N.Y.3d 976 (2012).

## B. Collateral Appeal

On March 7, 2011, Petitioner filed a *pro se* motion to vacate the judgment and set aside his sentence, pursuant to N.Y. CRIM. PROC. LAW §§ 440.10 and 440.20. State R. Part 2 at p. SR 299, Pet'r's § 440 Mot., dated Mar. 7, 2011. Therein, Petitioner argued that 1) his Counsel provided him with ineffective assistance because he didn't prepare a "defense" or move to dismiss the Indictment; 2) the NIK B drug test and correctional officer's testimony was unreliable and barred by the doctrines of *res judicata*, collateral estoppel, and administrative collateral estoppel; 3) his conviction is barred by administrative collateral estoppel and *res judicata*; and 4) the May 13, 2010 chemical analysis conducted by the New York State Police Forensic Investigation Center violated N.Y. CRIM. PROC. LAW § 715.50 because it was not performed within forty-five days. State R. Part 2 at pp. SR 302 & SR 304, Pet'r's Aff. in Supp. of § 440 Mot., dated Mar. 7, 2011.

On November 15, 2012, Attorney Edward Land informed the County Court that he was recently retained by the Petitioner to represent him in connection with his pending § 440.10 Motion, and was enclosing an Amended § 440 Motion "based upon

actual innocence." State R. Part 2 at p. SR 406, Land Lt., dated Nov. 15, 2012. Attorney Land further advised that he was withdrawing "the argument regarding consecutive sentence" and "any more collateral estoppel arguments as the Court of Appeals rejected them many years ago." *Id.* In the Amended § 440 Motion, Petitioner argued that 1) he was actually innocent because the Disciplinary Appeal Decision stated that there was no evidence of opiates; 2) the State failed to prove that the substance at issue was in fact a controlled substance; and 3) his Counsel rendered ineffective assistance as he submitted a pretrial motion to dismiss his charges based on collateral estoppel, "a doomed argument," and he failed to advise Petitioner of a direct consequence of pleading guilty. State R. Part 2 at pp. SR 409, SR 412, & SR 420-21, Affirm. in Supp. of Am.§ 440.10 Mot., dated Nov. 15, 2012 & SR 434-35, Suppl. Affirm. in Supp. of Am. § 440.10 Mot., Nov. 20, 2012.

On March 22, 2013, the County Court Judge denied Petitioner's § 440 motion because 1) his ineffective assistance claim was already decided on the merits on direct appeal; 2) N.Y. CRIM. PROC. LAW § 715.50 specifically states that failure to conduct a chemical analysis within forty-five days does not bar prosecution; 3) Petitioner's contention that the Disciplinary Appeal Decision bars the State from asserting that Petitioner possessed opiates was correctly withdrawn as it has no merit; 4) Petitioner's contention that he is actually innocent, based on the Disciplinary Appeal Decision's

finding that there was no opiates in his feces, was denied because i) he could have raised the issue on direct appeal, ii) that Decision "does not establish that there were no opiates present," and iii) a formal chemical analysis was subsequently conducted by the New York State Police Forensic Investigation Center, which "established the presence of heroin in one glassine bag recovered from the Defendant's feces." *See generally* State R. Part 2 at pp. SR 470-75, Cnty. Ct. Dec.-Order, dated Mar. 22, 2013. With respect to Petitioner's argument that the State could not prove the element of "intent to sell" because only one glassine bag was tested and that bag only contained 0.04 grams of heroin, the County Court Judge held it could not consider this argument because it could have been raised on appeal. *Id.* at p. SR 475.

### III.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B. Exhaustion

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state

remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights.[2] *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Id.* "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Glover v. Bennett*, 1998 WL 278272, at *1 (N.D.N.Y. May 21, 1998) (quoting *Daye v. Attorney Gen. of New York*, 696 F.2d at 192).[3]

This exhaustion requirement is satisfied if the federal claim has been "fairly

---

[2] 28 U.S.C. § 2254(b) and (c) provide, in part, as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[3] Since AEDPA's restriction on federal habeas power was premised upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Shriver*, 255 F.3d 45, 62 (2d Cir. 2001).

presented" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney Gen. of New York*, 696 F.2d at 191; *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999). "Although the petitioner need not have cited 'book and verse on the federal constitution,' he must have articulated 'the substantial equivalent' of the federal habeas claim." *Colon v. Artuz*, 174 F. Supp. 2d 108, 114 (S.D.N.Y. 2001) (quoting *Picard v. Connor*, 404 U.S. at 278); *see also Daye v. Attorney Gen. of New York*, 696 F.2d at 194. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye v. Attorney Gen. of New York*, 696 F.2d at 192; *Morales v. Miller*, 41 F. Supp. 2d at 374. In addition, in order for a petitioner to properly exhaust his or her claim, he or she "must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"; this includes presenting "both the factual and legal premise of the federal claims ultimately asserted in the [federal] habeas petition" to the New York Court of Appeals. *Galdemez v. Keane*, 394 F.3d 68 (2d Cir. 2005) (emphasis in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)).

Here, it is undisputed that Petitioner exhausted his ineffective assistance claim as he raised the issue to the Appellate Division and New York State Court of Appeals. It is also undisputed that Petitioner exhausted his double jeopardy claim as he raised it in his Appellate Division brief[4] and referred to this argument in his New York Court of Appeals Application for Leave to Appeal.

## C. Claims

### 1. Ineffective Assistance

Turning to the merits of this claim, the Appellate Division concluded that Petitioner's ineffective assistance claim did not survive his valid guilty plea nor his waiver of the right to appeal as he failed to show "that the plea bargaining process was infected by the allegedly ineffective assistance or that the defendant entered the plea because of defense counsel's allegedly poor performance." State R. Part 2 at p. SR 267, Appellate Div. Mem. & Order.

The Appellate Division's finding was not contrary to, or an unreasonable application of, clearly established Supreme Court Law. The Supreme Court has stated

---

[4] Specifically, Petitioner stated that "the filing of the Indictment [], subsequent to the dismissal of the aforesaid administrative charges, violate[d] his constitutional rights by illegally placing him in double jeopardy, and [] that the People should be estopped and precluded from advancing the issue of the alleged existence of heroin, the key issue relative to the criminal charges contained in the [] Indictment." Dkt. No. 90-1, State R. Part 1 at p. SR 061, Appellate Div. Br., dated Nov. 16, 2011. We find that reference to the Double Jeopardy Clause is sufficient to alert the Appellate Division to the constitutional dimension of Petitioner's claim. *See Jones v. Vacco*, 126 F.3d 408, 413-14 (2d Cir. 1997) ("Citing a specific constitutional provision or relying on federal constitutional precedents alerts state courts of the nature of the claim.") (citation omitted).

that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Because Petitioner is raising issues with Counsel's failure to dismiss the Indictment, this claim is waived by his guilty plea. *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (holding that an ineffective assistance claim based on an attorney's failure to dismiss an indictment does not relate to the plea bargaining process, thus, such an argument does not survive a guilty plea or an appeal waiver);[5] *Belle v. Superintendent*, 2013 WL 992663, at *7 (N.D.N.Y. Mar. 13, 2013) ("[P]etitioner is precluded from obtaining habeas relief on claims arising out of matters that occurred prior to the plea.") (citing *Tollett v. Henderson*, 411 U.S. at 267). Thus, because Plaintiff does not attack the voluntary and intelligent character of his guilty plea, this Court recommends **denying** the Petition with respect to his ineffective assistance claim. *See United States v. Blocker,* 269 F. App'x 117, 120 (2d Cir. 2008).

---

[5] In *Parisi*, the Second Circuit stated that it declined the "invitation" to discuss petitioner's ineffective assistance claim "based on the theory that an effective lawyer would have changed [petitioner's] strategic bargaining position pre-plea." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008). Nevertheless, the Second Court found that the petitioner's claim survived the appeal waiver because his *pro se* submissions could be read as "raising the claim that his attorney was ineffective in advising him to accept the plea agreement rather than advising him to dismiss the indictment with prejudice based on alleged Speedy Trial Act violations." *Id.* at 139. The Second Circuit explained, that when read in this light, the claim "survives the appeal waiver because, by focusing on the advice [petitioner] received from his attorney, it connects the alleged ineffectiveness of [petitioner's] attorney with the voluntary nature of his plea." *Id.* To be sure, this Court, despite reading Petitioner's submissions broadly, does not find that Petitioner is contesting the plea bargaining process.

## 2. Double Jeopardy

The Court will also address Petitioner's double jeopardy claim on the merits.[6] The Fifth Amendment's Double Jeopardy Clause, applicable to the states through the Fourteenth Amendment, proclaims that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend XV. The Fifth Amendment's prohibition on double jeopardy "protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Boyd v. Meachum,* 77 F.3d 60, 63 (2d Cir.1996) (citing *North Carolina v. Pearce,* 395 U.S. 711 (1969)). In cases where multiple punishments have been imposed for a single offense, it is the responsibility of the courts to ensure that "the total punishment did not exceed that authorized by the legislature." *Daniels v. Bronson*, 932 F.2d 102, 106 (2d Cir. 1991) (quoting *Jones v. Thomas,* 491 U.S. 376, 381 (1989)). However, the "Second Circuit has held that, because New York prison disciplinary proceedings are civil in nature, the Double Jeopardy Clause is not implicated when a prisoner is subjected to both disciplinary sanctions and a criminal conviction arising out of the same conduct." *H'Shaka v. Ricks,* 2010 WL 1689440, at *3 (N.D.N.Y. Apr. 27, 2010) (citing *Porter v. Coughlin,* 421 F.3d 141,146-149 (2d Cir. 2005); *see Porter v.*

---

[6] Petitioner's guilty plea is not a bar to his double jeopardy claim. *United States v. Gregg,* 463 F.3d 160, 165 (2d Cir. 2006).

*Coughlin,* 421 F.3d at 146-149 (applying *Hudson v. United States*, 522 U.S. 93 (1997) and *Kennedy v. Mendoza-Powers,* 372 U.S. 144 (1963)). Thus, Petitioner is not entitled to *habeas* relief under this ground. As a result, the Court recommends **denying** the Petition with respect to Petitioner's double jeopardy claim.

### D. Unexhausted Claim

### 1. Evidence Obtained Pursuant to an Unlawful Arrest

Petitioner also seeks *habeas* relief on the ground that his "conviction was based upon evidence obtained pursuant to an unlawful arrest." Pet. at. p. 6. To support this argument, Petitioner states that the "drug testing evidence did not provide a positive finding for opiates. Therefore, it was not [] (Drugs) . . . Petitioner was convicted on a felonious charge/false evidence." *Id.* However, this claim is unexhausted and procedurally defaulted because Petitioner is barred from presenting this issue to the Court of Appeals and is barred from seeking collateral review because he could have raised this issue on direct review. *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (citing to N.Y. Ct. Rules § 500.10[7] for the proposition that a petitioner's failure to raise issues before the Court of Appeals precludes further consideration in the New York courts when that petitioner already made the one request for leave to appeal to which he is entitled); N.Y. CRIM. PROC. LAW § 440.10(2)(c) (barring collateral review

---

[7] It should be noted that this section is typically cited as § 500.10(a) in various cases.

if a claim could have been raised on direct review but was not).  To deem a claim exhausted is a "cold comfort to most petitioners because it has been held that when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claim procedurally defaulted."  *Aparicio v. Artuz*, 269 F.3d at 90 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  A court's review of the substance of a procedurally defaulted claim is conditioned upon a petitioner demonstrating cause for the default and resulting prejudice, or presenting evidence to show that he is "actually innocent" of the crime of which he was found guilty.[8] *Coleman v. Thompson*, 501 U.S. at 748; *Ramirez v. Att'y Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman*); *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (stating the court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence").

To establish legal cause for a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with New York's

---

[8] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. *Murray v. Carrier*, 477 U.S. at 488. Attorney ignorance or inadvertence is not cause, however, since the attorney is considered the petitioner's agent when acting, or failing to act, in furtherance of the litigation, the petitioner must "bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. at 488).

Here, Petitioner has not stated a reason for the procedural default. Since he has not establish cause for the procedural default, this Court need not decide whether she also suffered actual prejudice because federal *habeas* relief is unavailable for a procedurally defaulted claim, unless both cause and prejudice are demonstrated. *See, e.g.*, *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.) (citing *Stepney*). In addition, since Petitioner has not established that he is actually innocent of any of the crimes of which he was convicted of, the Court recommends that the Petition be **denied** with respect to this claim.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 6 36(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: July 29, 2015
      Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge